UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONEEL DEO (A#079-261-235), | No. 1:26-cv-02068-DC-SCR |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

## I.    Factual and Procedural History

Petitioner is a noncitizen who entered the United States on an unknown date. In 2005, he became a lawful permanent resident ("LPR"). ECF No. 1 at 5. Petitioner was detained by Immigration and Customs Enforcement ("ICE") officers on December 19, 2023 and has been in continuous custody for almost two and a half years. ECF No. 1 at 5. He has not received a bond hearing before an immigration judge ("IJ") during that time period. Id. He is currently detained at the California City Detention Facility located within this judicial district. ECF No. 1 at 3.

In his § 2241 application, Petitioner contends that his prolonged detention without a hearing violates the Fifth Amendment Due Process Clause. ECF No. 1 at 16. Petitioner asserts

1

that his detention is likely to continue in the foreseeable future as he pursues relief from removal, a process for which he should not be punished.  Id. at 13.  Petitioner seeks immediate release or, in the alternative, a bond hearing where the government has the burden of demonstrating by clear and convincing evidence that petitioner is a flight risk or danger.  ECF No. 1 at 17.

In their answer, Respondents assert that Petitioner is mandatorily detained pursuant to 8 U.S.C. § 1226(c)(1)(B) based on a conviction for an aggravated felony under the Immigration and Nationality Act ("INA").  ECF No. 7 at 2; see also ECF No. 7 at 28-34 (state court records for conviction for Making Criminal Threats Resulting in Death or Great Bodily Injury in violation of California Penal Code § 422).  If Petitioner challenges the mandatory nature of his detention based on this aggravated felony, Respondents contend that "[t]he Court should require Petitioner to exhaust his Joseph hearing before any collateral challenge tohis mandatory detention[.]"  ECF No. 7 at 2.  Regarding the prolonged detention claim, Respondents indicate that the mandatory detention under § 1226(c) "has a definite termination point: the conclusion of removal proceedings."  Id.

An IJ ordered Petitioner removed to Fiji on November 7, 2024, and the BIA dismissed his appeal on April 11, 2025.  ECF No. 7 at 49-52, 59-62.  Petitioner filed a petition for review in the Ninth Circuit Court of Appeals on April 18, 2025.  ECF No. 7 at 64-69.  The petitioner for review remains pending.  Respondents argue that Petitioner's detention continues to serve a legitimate purpose in ensuring his appearance for removal to Fiji and preventing him from committing further crimes.  Id. at 4.

By way of a counseled reply, Petitioner indicates that he is a native and citizen of Fiji who was lawfully admitted to the United States as a minor child with his parents.  ECF No. 10 at 3. His parents, who are naturalized U.S. citizens, reside in Sacramento along with his siblings and extended family who will provide him housing and access to mental health treatment.  ECF No. 10 at 3-4.  He suffers from bipolar disorder and schizophrenia, which he manages with medication.  Id.  While in immigration detention, Petitioner has not consistently received his psychiatric medication resulting in "recurrence of [his] symptoms including confusion and

auditory disturbances." Id. at 3.[1]  An IJ granted Petitioner's motion to reopen his removal proceedings based on "the nexus between Mr. Deo's mental health conditions and his criminal conduct." Id. at 4.  According to Petitioner, this finding by the IJ "directly undermines any contention that Mr. Deo poses an unmanageable danger when treated." Id.  Ultimately, the IJ did order Petitioner removed based on a conviction for an aggravated felony and a particularly serious crime, but his appeal is pending before the BIA.  Id.  According to Petitioner, "[t]here is no indication of when a decision will issue." Id. at 15.

Petitioner emphasizes the length of his detention of nearly two and one-half years without any individualized assessment of whether he represents a flight risk or danger.  ECF No. 10 at 2. "Respondents' primary contention is that 8 U.S.C. §1226(c) authorizes Mr. Deo's indefinite mandatory detention without any bond hearing whatsoever.  This position is untenable" according to Petitioner.  Id.  Based on the test announced in Mathews v. Eldridge, 424 U.S. 319 (1976), Petitioner is entitled to relief in the form of an "individualized bond hearing before an immigration judge within seven days, at which the government bears the burden of justifying continued detention by clear and convincing evidence." ECF No. 10 at 5-10.  According to Petitioner, the legal issue before the Court is not whether Petitioner is detained pursuant to 1226(c), but rather whether Petitioner's criminal conviction alone can justify his indefinite civil detention without any hearing as a matter of constitutional due process. Id. at 11.

Finally, Petitioner emphasizes that a Joseph hearing is not required for exhaustion purposes because it does not constitute a bond hearing, nor can it serve as a substitute for a constitutionally mandated individualized assessment of dangerousness and flight risk. Id. at 13. Moreover, "If the government believed mandatory detention could lawfully continue indefinitely without any hearing, it would have no need to propose even a Joseph hearing as an alternative remedy. The government's own recognition that some process is warranted confirms that the only question is what process is due, and binding Ninth Circuit authority answers that question

---

[1]  Later in the reply, Petitioner emphasizes that "civil detention that fails to provide adequate mental health treatment becomes increasingly punitive in character." Id. at 14 (citing Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004).

decisively."  Id.

## II.   Statutory Immigration Standards

According to Respondents, Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c).  That provision states that the Attorney General "shall take into custody any [noncitizen] who" falls into one of the enumerated categories involving criminal offenses, § 1226(c)(1)(A)-(E), which includes any offense covered in section 1227(a)(2)(A)(iii).  It further specifies that the Attorney General "may release" such a noncitizen "only if the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the noncitizen will not pose a danger or flight risk, § 1226(c)(2).  Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original).

Petitioner, who is represented by counsel, does not challenge the designation of his criminal conviction as an aggravated felony.  This issue is not disputed between the parties.[2]  As a result, the undersigned concludes that Petitioner is detained pursuant to 8 U.S.C. § 1226(c).

## III.   Due Process Analysis

The petition raises an as-applied, procedural due process challenge to the constitutionality of petitioner's mandatory detention.  At this point, petitioner has been detained for almost one year.  During this time period, there is no record of any bond hearing before an IJ to determine whether his detention is justified based on his dangerousness or flight risk.

The Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c) in Demore v. Kim, 538 U.S. 510, 531 (2003).  The Supreme Court did so with the

---

[2]  To the extent that Respondents' suggest that Petitioner should be required to request a Joseph hearing in immigration court to challenge the mandatory nature of his detention, the undersigned concludes that this is not necessary for Petitioner to exhaust his administrative remedies.  See ECF No. 7 at 4.  The remedy in a Joseph hearing is a finding that the noncitizen is not "subject to" 8 U.S.C. § 1226(c).  See Joseph, 22 I. & N. Dec. 799, 804.  But here Petitioner effectively concedes he is subject to § 1226(c) and argues that due process entitles him to a bond hearing.  In sum, a Joseph hearing would not provide Petitioner with the relief he seeks through his § 2241 petition.  See Arnold v. Crawford, 554 F. Supp. 2d 987, 989 (D. Ariz. 2008) ("the Court finds that exhaustion via a Joseph hearing is not required because Petitioner is not challenging whether he is subject to mandatory detention."), order vacated on reconsideration on other grounds, No. CV 07-170 PHX JAT(LOA), 2008 WL 4999211 (D. Ariz. Nov. 21, 2008).  For this reason, the undersigned finds that prudential exhaustion of administrative remedies is not required in this case.

understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal." Id. at 513, 529 n.12, 530. Justice Kennedy joined the opinion in full, but wrote a concurring opinion recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring). Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court recognized the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420.

The Ninth Circuit Court of Appeal has expressly declined to address "[w]hether due process requires a bond hearing" in such situations. Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022), cert. granted, judgment vacated, 144 S. Ct. 1339 (2024). However, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional." Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018). Other federal appellate courts have also concluded that Demore does not foreclose as-applied challenges to prolonged detention under § 1226(c). Recently, the Second Circuit held that "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary." Black v. Decker, 103 F.4th 133, 145 (2d Cir. 2024). The undersigned finds this authority persuasive and agrees that Demore does not bar an as-applied challenge to prolonged detention without a hearing to determine whether such detention is justified. The next step is to determine the appropriate framework in which to analyze petitioner's procedural due process argument.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has

5

concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

The undersigned has considered the various tests developed by district courts within the Ninth Circuit, and finds that Mathews v. Eldridge, 424 U.S. 319 (1976), provides the appropriate test for due process challenges to prolonged detention under § 1226(c). The undersigned is particularly persuaded by the Second Circuit's reasoning in Black, 103 F.4th at 145-49, that the Mathews test is flexible enough to account for the factors identified by federal courts when deciding whether detention under § 1226(c) has become unreasonably prolonged. Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

### IV.    Mathews Factors

#### A. Private Interest

An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). Courts of Appeal have generally declined to adopt a specific threshold for when detention under § 1226(c) becomes prolonged. See German Santos v. Warden Pike Cty. Correctional Facility, 965 F.3d 203, 211 (3d Cir. 2020); Black, 103 F.4th at 150; Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021). While the Ninth Circuit has not addressed this question, it has previously referred to detentions longer than six months as prolonged "in the context of detentions for which no individualized bond hearings

had taken place at all because the statutes on their faces did not allow for them." Rodriguez Diaz, 53 F.4th at 1207 (citations omitted).  The almost two and a half years of detention at issue in this case certainly can be classified as prolonged detention as it far exceeds the "typical" length of detention described in Demore.

Moreover, courts hearing as-applied challenges to § 1226(c) detention have also considered the likely duration of future detention.  See Lopez, 631 F. Supp. 3d at 880–81 (finding petitioner's administrative appeals and likely appeal to the Ninth Circuit weighed toward granting request for bond hearing).  There is no indication from either party as to when Petitioner's BIA appeal will be resolved.  Even this decision is not the final step in removal proceedings.  Either party may choose to seek review by the Ninth Circuit Court of Appeals.  Therefore, based on its duration to date without bond and the likelihood of continued mandatory detention during all these removal proceedings, the undersigned finds petitioner's detention is sufficiently "prolonged" and confers a substantial private interest.

### B.  Risk of Erroneous Deprivation

The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  Mathews, 424 U.S. at 335.  This factor firmly favors petitioner for several reasons.  "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial."  Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) (abrogated on other grounds).  "In the absence of any meaningful initial procedural safeguards, it appears to us that almost any additional procedural safeguards at some point in the detention would add value."  Black, 103 F.4th at 153 (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year detention under § 1226(c)).  The risk of an erroneous deprivation of Petitioner's liberty is also compounded by his mental illness.  Accordingly, the second Mathews factor also weighs strongly in favor of Petitioner.

////

7

### C. Government Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens].'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 515). Courts have also recognized that the detention of noncitizens during removal proceedings can also serve the legitimate government purpose of preventing flight. Prieto-Romero, 534 F.3d at 1065 (citing Demore, 538 U.S. at 528). Thus, in some general way, the government has an interest in the detention of non-citizens held under § 1226(c). However, "the additional procedural safeguards we would allow here under Mathews do nothing to undercut those interests. At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees." Black, 103 F.4th at 153–54; see also Jimenez, 2020 WL 510347, at *3 ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.") (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)). In Petitioner's case, the government's interest in further detaining him without a hearing to determine whether such detention is justified is minimal.

Administrative burden is a legally cognizable interest under Mathews. But Respondents' interest is further diminished by the low fiscal and administrative burdens associated with a bond hearing. See D. L.C., 2026 WL 25511, at *5 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

### V.    Remedy

For reasons explained above in the Mathews analysis, the undersigned finds that the appropriate remedy in this case is a bond hearing where the government has the burden of demonstrating by clear and convincing evidence that Petitioner presents a risk of flight or danger.

See Singh v. Albarran, No. 1:26-cv-0940 DC DMC (HC), 2026 WL 392169, at *5 (E.D. Cal. Feb. 12, 2026) (collecting cases); Singh v. Chestnut, No. 1:26-cv-00127 DC SCR (HC), 2026 WL 766567 (E.D. Cal. March 18, 2026) (adopting Findings and Recommendations and granting a bond hearing); see also Black, 103 F.4th at 157 ("[O]nce detention under section 1226(c) has become so prolonged that due process warrants a bond hearing . . . the government must justify continued detention at such a hearing . . . by clear and convincing evidence.").

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondents be ordered to provide Petitioner with a bond hearing before an immigration judge at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within seven (7) days from any order resolving the § 2241 petition.

3. Respondents be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

4. If Petitioner is granted release on bond, Respondents shall return all of Petitioner's documents and possessions at the time of release.

5. The final order in this case not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

6. Judgement be entered in Petitioner's favor and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties

are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 2, 2026

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE